Cite as 2024 Ark. App. 618

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-23-750

|  |  |
|---|---|
| BOONEVILLE HUMAN DEVELOPMENT CENTER AND ARKANSAS INSURANCE DEPARTMENT, PUBLIC EMPLOYEE CLAIMS DIVISION<br><br>APPELLANTS<br><br>V.<br><br>JIMMY FOSTER<br><br>APPELLEE | Opinion Delivered December 11, 2024<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. H103080]<br><br><br><br>AFFIRMED IN PART; REVERSED IN PART |

**WENDY SCHOLTENS WOOD, Judge**

The Booneville Human Development Center (BHDC) appeals a decision of the Arkansas Worker's Compensation Commission (Commission) finding that Jimmy Foster proved that his atrial-fibrillation heart condition is a natural consequence of his compensable COVID-19 illness and that he is entitled to a 10 percent permanent anatomical impairment as a result of his atrial-fibrillation diagnosis. BHDC contends that the Commission's decision is not supported by substantial evidence. We affirm in part and reverse in part.

On or about July 31, 2020, Foster contracted COVID-19 while working for BHDC in a youth mental-health facility. BHDC accepted Foster's COVID-19 illness as compensable. Foster was hospitalized on August 8 for about two months, including time spent in the

intensive care unit and in long-term acute care. He was discharged to a rehabilitation nursing facility for several weeks before going home. Following inpatient treatment, Foster was seen by multiple doctors, including Dr. Sara Roberson (family physician), Dr. Michael Morse (neurologist), Dr. Julio Schwarz (cardiologist), and Dr. Terry Clark (occupational-medicine physician).

In December 2020, Foster was seen by Dr. Morse for complaints of tingling and numbness in his right hand. After testing, Dr. Morse diagnosed Foster with right carpal-tunnel syndrome and mild nonlocalizing ulnar neuropathy.

Foster first saw Dr. Schwarz on February 1, 2021. Foster's main complaints were listed as paroxysmal atrial fibrillation and dyspnea on exertion. Dr. Schwarz's report stated:

> 66-year old white male who has been diagnosed as having paroxysmal atrial fibrillation. Patient does not experience specific symptoms with recurrence of atrial fibrillation. He does complain of dyspnea on mild to moderate exertion, moderate to severe in intensity, subsiding within 3 minutes post exercise cessation. Patient describes no other associated symptoms. The only means to avoid such is to prevent this level of physical activity.

Dr. Schwarz's assessment included dyspnea on exertion, paroxysmal atrial fibrillation, essential hypertension, family history of heart disease, "subarachnoid hemorrhage in August 2020, of uncertain etiology," and "residual right hemiparesis, overweight, residual right hemiparesis, ambulates with walker." Dr. Schwarz stated that Foster's blood pressure was not "at goal" and recommended medication but noted Foster was not a good candidate for anticoagulants. Dr. Schwarz recommended further studies.

On February 15, 2022, Foster returned to Dr. Schwarz's office for a follow-up of his heart condition and was seen by family nurse practitioner Gayla Johnson. Foster complained of dizziness, increased heart rate, and his heart beating "fast and hard." Johnson's report states that EKG results showed no new significant interval changes. She recommended a Holter monitor study and an "MPI test." Foster saw Dr. Schwarz on March 28, and he ordered a Holter monitor study. After reviewing the results of the study, Dr. Schwarz cleared Foster to complete a Functional Capacity Evaluation (FCE), which was performed by Dr. Clark on April 26. Dr. Clark concluded that Foster gave "an unreliable effort" with only "13 of 53 consistency measures within the expected limits." Dr. Clark, in an impairment-evaluation summary dated April 26, 2022, opined that Foster had reached maximum medical improvement (MMI) and gave Foster a 10 percent whole-person impairment rating on the basis of his respiratory condition.[1]

Foster saw Dr. Roberson on June 17. Coinciding with this visit, Dr. Roberson authored the following June 17 letter:

To whom it may concern:

Jimmy G Foster 10/16/1954 is a patient of mine at the family medicine clinic in Waldron. I have been this patient's primary care provider since 2014. He is requesting this letter statement concerning his ability to work. This patient was hospitalized with severe COVID-pneumonia, he has had deterioration in his health that has included diastolic heart failure, pulmonary hypertension, paroxysmal A. fib and respiratory failure. He has had a great deal of trouble regaining his prior level of functioning. I do not believe this patient will be able to return to work and should strongly consider retirement at this time.

---

[1]This respiratory impairment rating was accepted by BHDC.

On August 15, Foster went for a follow-up of his heart condition at Dr. Schwarz's office and was seen by Lynn Lineberry, APRN. An EKG showed no new interval changes, and Lineberry stated that Foster was stable from the cardiology viewpoint.

On September 26, Foster saw Dr. Clark at the Occupational Medicine Clinic:

Jimmy's primary problem is COVID. The problem began on 7/31/2020. Additional History: Pt contracted COVID while at work. He has had many complications from it. He is here to review FCE and IR results.

He apparently contracted Covid-19 at work and had an extremely complicated course which included respiratory failure, a small right-sided subarachnoid hemorrhage, a coccygeal decubitus, atrial fibrillation and right ulnar nerve neuropathy.

He had an FCE on 4/26/22 which showed multiple inconsistencies and sub-maximal effort. He is here today to review those reports.

Dr. Clark stated that Foster reached MMI as of September 26, 2022, and that Foster could return to work at regular duty effective September 26. Due to inconsistences on the FCE, Dr. Clark was unable to determine work restrictions.

Relevant to this appeal, Foster claimed that (1) as result of his COVID-19 illness, he was entitled to an impairment rating for right ulnar nerve neuropathy and an impairment rating for an injury or disease of his heart, and (2) he was entitled to temporary total-disability (TTD) benefits from May 6, 2022, until September 26, 2022. BHDC controverted these claims.

After a December 6, 2022 hearing, the administrative law judge determined that Foster failed to prove that his right ulnar nerve neuropathy and heart disease were the result of his compensable COVID-19 illness but found that he had met his burden of proving

4

entitlement to TTD benefits. Foster appealed to the Commission, and BHDC cross-appealed.

In its de novo review, the Commission found that Foster failed to prove that his right ulnar neuropathy was a natural consequence of his COVID-19 illness and failed to prove that he was entitled to additional TTD benefits. However, the Commission did find that Foster proved that his atrial fibrillation was a natural consequence of his compensable COVID-19 illness and that he sustained a 10 percent anatomical impairment as a result of his atrial-fibrillation diagnosis. BHDC appeals from the Commission's decision.[2]

In reviewing a decision of the Commission, this court reviews the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if the decision is supported by substantial evidence. *Min. Springs - Saratoga Sch. Dist. v. Bell*, 2023 Ark. App. 458, at 7, 678 S.W.3d 58, 62. Substantial evidence exists if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Id.* at 7, 678 S.W.3d at 62. The issue is not whether the appellate court might have reached a different result from that of the Commission but whether reasonable minds could reach the result found by the Commission. *Id.*, 678 S.W.3d at 62. It is the Commission's duty, not ours, to make credibility determinations, to weigh the evidence, and to resolve conflicts in the medical testimony. *Id.*, 678 S.W.3d at 62.

I. *Natural Consequence*

---

[2]Foster did not file a cross-appeal.

5

Arkansas Code Annotated section 11-9-508(a)(1) (Supp. 2023) requires an employer to provide an injured employee such medical services as may be reasonably necessary in connection with the injury received by the employee. When the primary injury is shown to have arisen out of and in the course of employment, the employer is responsible for any natural consequence that flows from that injury. *Nichols v. Omaha Sch. Dist.*, 2010 Ark. App. 194, at 5, 374 S.W.3d 148, 151. However, for this rule to apply, the basic test is whether there is a causal connection between the injury and the consequences of the injury. *Id.*, 374 S.W.3d at 151. The burden is on the employee to establish the necessary causal connection. *Id.* at 5–6, 374 S.W.3d at 151. The determination of whether a causal connection exists between two episodes is a question of fact for the Commission. *Ingram v. Tyson Mexican Original*, 2015 Ark. App. 519, at 6.

Here, the Commission found that Foster's atrial fibrillation was a natural of consequence of his compensable COVID-19 illness. In doing so, the Commission relied on the following: Foster's testimony that he had not been diagnosed with atrial fibrillation prior to contracting COVID-19 at work; Dr. Roberson's June 17, 2022 report stating, "This patient was hospitalized with severe COVID-pneumonia, he has had deterioration in his health that has included diastolic heart failure, pulmonary hypertension, paroxysmal A. fib and respiratory failure"; and Dr. Clark's September 26, 2022 report stating, "He apparently contracted COVID-19 at work and had an extremely complicated course which included respiratory failure, a small right-sided subarachnoid hemorrhage, a coccygeal decubitus, atrial fibrillation and right ulnar nerve neuropathy."

6

On appeal, BHDC argues that Foster's general allegation that his atrial fibrillation is attributable to COVID-19 does not satisfy the "major cause requirement for compensability" pursuant to Arkansas Code Annotated section 11-9-114 (Repl. 2012). Section 11-9-114(a) provides:

> A cardiovascular, coronary, pulmonary, respiratory, or cerebrovascular accident or myocardial infarction causing injury, illness, or death is a compensable injury only if, in relation to other factors contributing to the physical harm, an accident is the major cause of the physical harm.

However, the Commission did not analyze this case under this section, and it is not applicable because this was not a cardiovascular "accident" causing an injury. Rather, the issue was whether Foster's atrial fibrillation was a compensable consequence of the admittedly compensable COVID-19 illness.

BHDC next contends that Foster failed to prove that his atrial fibrillation was a natural consequence of his compensable COVID-19 illness. Under this point, BHDC argues that the reports of cardiologist Dr. Schwarz and his nurse practitioner do not opine that Foster's COVID-19 illness is the cause of his atrial fibrillation. BHDC asked Dr. Schwarz to issue a causation opinion, but according to an August 24, 2022 progress note of Foster's case manager, Dr. Schwarz's "nurse said he was not able to determine relatedness or non-relatedness to the diagnosis of paroxysmal atrial fibrillation to COVID because, when Mr. Foster came to him for treatment, the diagnosis was present and he was just providing treatment."

7

BHDC also argues under this point that the Commission relied on the reports of Drs. Roberson and Clark for causation, but these reports merely contain a list of Foster's conditions, which include atrial fibrillation, and do not expressly state that COVID-19 caused them. BHDC further notes that the medical records include other preexisting conditions that could be the cause of Foster's atrial fibrillation: morbid obesity, BMI between 35–40, and comorbid conditions of hypertension and dyslipidemia. Additionally, BHDC points out that the Commission relied on Dr. Clark's September 26, 2022 report to support causation of atrial fibrillation but found that Foster failed to present causation evidence to support his claim for right ulnar nerve neuropathy, which Dr. Clark also mentioned in that report.

While recognizing that the Commission has the authority to weigh the medical evidence, BHDC contends that the Commission is not more qualified than a cardiologist to determine that COVID-19 is the cause of Foster's atrial fibrillation when Dr. Schwarz declined to do so and that the Commission cannot arbitrarily disregard medical evidence contained in the record. BHDC is essentially arguing that the Commission incorrectly interpreted Dr. Roberson's and Dr. Clark's reports to state something that they do not state and that it disregarded what the medical records do state, which *according to BHDC* is that Foster had a "history of high blood pressure and obesity and a family history of heart disease, which are the causes of his own heart disease." BHDC asserts that reasonable minds could not reach the same conclusion as the Commission. We disagree.

As stated previously, whether there is a causal connection is a question of fact for the Commission. Here, the Commission relied on Foster's testimony that he had not been diagnosed with atrial fibrillation before his COVID-19 illness along with the medical records showing that Foster had a complicated course of COVID-19 that resulted in a deterioration of his health and included a diagnosis of atrial fibrillation. It is well settled that it is within the Commission's province to weigh all the medical evidence and to determine credibility of witnesses and the weight to be accorded such. *Nucor Yamato Steel Co. v. Echols*, 2023 Ark. App. 43, at 7, 660 S.W.3d 341, 346. The Commission interpreted the reports of Dr. Roberson and Dr. Clark to establish causation in conjunction with Foster's testimony. In addition, there is no question that Foster had a severe case of COVID-19 given his extended stay in the hospital. The issue on review is not whether we would reach the same result as the Commission but whether reasonable minds could reach the same result. We hold that substantial evidence supports the Commission's finding of natural consequence.

## II. *Impairment Rating*

BHDC contends that the Commission's award of a 10 percent anatomical impairment rating is not supported by the evidence. Specifically, BHDC argues that there is a lack of substantial evidence to support the Commission's finding of major cause.

"Permanent impairment" has been defined as any permanent functional or anatomical loss remaining after the healing period has ended. *Main v. Metals*, 2010 Ark. App. 585, at 9, 377 S.W.3d 506, 511 (citing *Johnson v. Gen. Dynamics*, 46 Ark. App. 188, 878 S.W.2d 411 (1994)). Any determination of the existence or extent of physical impairment

9

shall be supported by objective and measurable physical or mental findings. *Main*, 2010 Ark. App. 585, at 9, 377 S.W.3d at 511 (citing Ark. Code Ann. § 11-9-704(c)(1)(B)). Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment. Ark. Code Ann. § 11-9-102 (4)(F)(ii)(a) (Supp. 2023). "Major cause" means more than 50 percent of the cause, and a finding of major cause shall be established according to the preponderance of the evidence. Ark. Code Ann. § 11-9-102(14)(A)–(B).

The Commission's opinion stated: "The claimant also proved that the compensable injury was the major cause of the 10% anatomical impairment rating resulting from atrial fibrillation." The only evidence the Commission appears to rely on for this finding is that Foster's atrial fibrillation was a natural consequence of his compensable COVID-19 illness. However, evidence of a causal connection between Foster's COVID-19 illness and his atrial fibrillation does not automatically resolve the issue of Foster's entitlement to permanent benefits for atrial fibrillation. *Evidence* supporting a major-cause determination is required. And in this case, no lay witness or doctor has opined that Foster's COVID-19 illness was the major cause of his atrial fibrillation. Moreover, the medical records show that Foster has a preexisting history of hypertension and obesity that could have caused his atrial fibrillation.

We hold that the Commission's finding of major cause is not supported by substantial evidence. Because there is no evidence in the record—medical or otherwise—that Foster's compensable COVID-19 illness is the major cause of his atrial fibrillation, reasonable minds could not have reached the same conclusion as the Commission without resorting to

10

speculation or conjecture. Therefore, we reverse the Commission's finding that Foster is entitled to a 10 percent permanent impairment rating for his atrial fibrillation.

Affirmed in part; reversed in part.

MURPHY and BROWN, JJ., agree.

*Charles H. McLemore, Jr.*, for separate appellee Public Employee Claims Division.

*The Law Offices of Craig L. Cook*, by: *Jarid M. Kinder*, for appellee.