Cite as 2025 Ark. App. 406

# ARKANSAS COURT OF APPEALS
## DIVISION I
No. CV-24-755

| | |
|---|---|
| TINA L. MELIUS | Opinion Delivered September 3, 2025 |
| APPELLANT | |
| | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | [NO. G807060] |
| CHAPEL RIDGE NURSING CENTER, LLC; AND AMTRUST NORTH AMERICA | |
| APPELLEES | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Tina Melius appeals the August 21, 2024 opinion of the Arkansas Workers' Compensation Commission ("Commission") denying her claim for benefits against Chapel Ridge Nursing Center, LLC ("Chapel Ridge"), and AmTrust North America (collectively "appellees"). Melius challenges the Commission's finding that she did not prove that she sustained a compensable low-back injury on July 11, 2018. Melius argues that "objective medical evidence and medical opinion" demonstrate that the pain she suffered in her piriformis muscle, right buttock, and right thigh after the work-related incident was merely a symptom of an underlying low-back injury. We affirm.

This case has a long procedural history. On July 11, 2018, Melius, a treatment nurse at Chapel Ridge, reported an on-the-job injury to her right buttock and thigh while lifting a

patient. That day, she was seen by Dr. Keith Holder at Mercy Clinic. According to Dr. Holder's notes, Melius complained of a sharp, shooting pain in her right gluteal area after helping lift a patient from the bed to a gurney. Dr. Holder's examination notes indicate that Melius had "pain to palpitation over the piriformis"[1] in her right hip. Dr. Holder diagnosed Melius with a "strain of muscle, fascia and tendon of right hip" and prescribed medication to treat muscle spasticity.

On July 19, Melius had a follow-up appointment with Dr. Holder for continued complaints of pain in her right gluteal area. Dr. Holder recommended physical therapy for the pain. She was seen by Dr. Holder on July 26 and on August 2 for continued tenderness over the right piriformis, and he again recommended physical therapy. Dr. Holder examined her again in October for "hip strain" and requested an MRI of the lumbar spine and right thigh, which appellees denied.

Dr. Roy Sampson was Melius's rheumatologist who had been treating her since 2017 for arthritis in her hands. On November 1, 2018, Dr. Sampson noted that Melius had been dealing with "hip and back pain" from an injury at work and had been having trouble getting an MRI. Dr. Holder's notes from an appointment on November 6 indicate that Melius's "right gluteal" pain level at night had increased and that she had not yet tried gabapentin that was prescribed for relief. Dr. Holder referred Melius to a pain-management specialist for an injection for her "right hip strain."

---

[1]Melius testified at the April 16, 2019 hearing that the piriformis muscle runs "east to west under the glutes."

On November 13, Melius consulted with Dr. Brian Goodman at the Mercy Clinic Department of Pain Medicine, who said she presented with back pain that had been "gradually worsening over time" and assessed her with right gluteal muscle strain and possible piriformis syndrome. She was given a trigger-point injection in her right gluteal muscle. Melius told Dr. Holder in a November 30 follow-up appointment that she felt a mild decrease in pain after the steroid injection.

When Melius sought workers' compensation benefits for the right buttock and thigh injury, appellees controverted the claim. A hearing before an administrative law judge (ALJ) was held on April 16, 2019. After the hearing, the ALJ issued an opinion on June 25, 2019, denying Melius's claim. The ALJ found that she failed to prove that she had sustained a compensable injury to her right buttock and thigh because she failed to provide objective medical evidence supporting the injury. The Commission affirmed and adopted the ALJ's opinion in a December 19 opinion. On February 10, 2021, this court held that the medical evidence did contain objective findings and reversed and remanded the Commission's opinion for further determinations of whether she suffered a compensable injury to her buttock and thigh on July 11, 2018; whether she was entitled to medical treatment for that injury; and whether she was entitled to temporary partial-disability benefits. *Melius v. Chapel Ridge Nursing Ctr., LLC*, 2021 Ark. App. 61, at 8, 618 S.W.3d 410, 415 (*Melius I*).

On remand from *Melius I*, the Commission, on September 28, 2021, remanded the case to the ALJ to make the determinations directed by this court. On July 21, 2022, a second hearing was held before the ALJ. Before the hearing, the parties stipulated that Melius

sustained a "compensable piriformis injury to the buttock and thigh on July 11, 2018," and that appellees paid her medical treatment from the date of injury through April 16, 2019, for that injury. After the hearing, the ALJ issued an opinion on October 18, 2022, finding that Melius was entitled to temporary partial-disability benefits from July 12 until she began her new position with Chapel Ridge sometime between September and December 2018 and to an attorney's fee. Appellees did not appeal this decision.

Melius continued to seek medical treatment for her pain using her private health insurance. This treatment included an examination on July 18, 2019, by Dr. Thomas Cheyne, at Mercy Clinic River Valley. His impression was that she had chronic right hip pain and a probable hamstring tendon injury. He recommended an MRI of her right hip, which was normal. In a follow-up appointment on July 31, Dr. Cheyne stated that he continued to believe it was "not a lower back issue" or a "right hip joint issue" but more likely a "muscle or tendon injury." He referred Melius to Dr. Greg Jones for a second opinion.

Dr. Jones examined Melius on August 21, noting that she had come to him for complaints of continued hip pain from a July 2018 work incident. He said her radicular pain symptoms were down the right leg. He requested an MRI of her lumbar spine and provided the following in his notes of the examination:

> I think that she has hurt her back. This isn't a piriformis lesion. Certainly that can contribute to sciatic inflammation, but I think we need to find out at this point, a year after the index injury, if there is something more serious in terms of her back that could be addressed. She was at Chapel Ridge Health & Rehab when this occurred. Dr. Bishop is her primary medical physician. They have an MRI of the hip.

4

I have reviewed it carefully. There is no evidence of tendon avulsion, femoral acetabular arthritis, avascular necrosis, or other intrinsic femoral acetabular issues in terms of the source of her present discomfort. On external rotation, the hip did not reproduce her pain and while palpably she is tender posteriorly along the tract of the sciatic nerve, I do not feel an actual muscle avulsion where the "lump" that the therapist has been so prominent about. We will see her back when the lumbar MRI is completed and proceed with conservative care further.

The impression from the August 28, 2019 lumber MRI provided:

1. Central/left paracentral disc protrusion. L4-5 level, along with hypertrophy the facets and ligamentum flavum causing at least moderate central stenosis with probable mass effect left L5 nerve root lateral recess.

2. Broad-based central protrusion L5-S1 level mild central stenosis. There may be some mild mass effect left SI nerve root, lateral recess.

At a follow-up appointment on September 4, Dr. Jones did not recommend surgery for Melius's back issues, noting that her symptoms had improved considerably with physiotherapy. His notes provide the following regarding Melius's request for his opinion regarding the onset of her back issues: "Certainly, the story she provided historically that she felt a pop, had swelling and presented immediately, this represents an exacerbation of an underlying degenerative disc phenomenon and at least by the historical information stated, she is thankfully better and I do not think will require any surgical intervention at this juncture[.]"

Melius returned to see Dr. Cheyne more than two years later on November 23, 2021. His notes from the visit provide the following:

Ms. Melius is seen back for the first time since I last saw her in July 2019, with right buttock pain. She eventually saw Dr. Jones who thought that this was likely related to her back. She had an MRI scan done and had a left paracentral disk protrusion at L4-5 and a central disk protrusion at L5-S1. She got better to a point

5

with physical therapy and anti-inflammatory medications. She also got some relief from a gluteal injection which was done by Dr. Goodman; however, she has persistent pain. I have looked at her MRI scan and still believe that this is likely related to her back, although it is certainly possible since she got relief from the injection by Dr. Goodman. We will get her back in to see him for another injection or 2. If gluteal injections do not work, then we will consider LESIs.

In light of this medical evidence and after the ALJ awarded Melius benefits in October 2022 pursuant to this court's remand, Melius filed another claim for benefits seeking entitlement to additional medical treatment for her July 11, 2018 compensable injury to her right buttock and thigh or, alternatively, a determination as to whether she sustained a compensable injury to her low back on July 11, 2018.  A third hearing was held before an ALJ on November 30, 2023. The parties stipulated that Melius sustained a compensable injury to her right buttock and thigh on July 11, 2018, and that all prior opinions were res judicata and law of the case. The following issues were in contention at the hearing:

1. Whether [Melius] is entitled to additional medical treatment for her compensable . . . right thigh injuries that occurred on July 11, 2018, or alternatively, whether Claimant sustained a compensable injury to her low back on or about July 11, 2018.

2. Whether [Melius] is entitled to medical treatment for compensable low[-]back injury.

3. Whether [Melius] is entitled to temporary partial[-]disability benefits from September 19, 2019, to a date yet to be determined.

4. [Appellees] raise the Statute of Limitations defense.

5. Whether [Melius's] attorney is entitled to an attorney fee.

Melius admitted that she signed a Form AR-C on October 16, 2018, on which she described the injury: "Was helping lift a patient to move to another facility when felt a twinge

in buttocks. Buttocks and thigh." She also admitted that at the first hearing in April 2019, she had testified that she was not claiming that she suffered a back injury and that the pain radiated from her "buttocks to behind [her] knee." She also agreed that her symptoms from the July 2018 injury had been on her right side, while the MRI of her lumbar spine showed disc herniations on the left side only. Finally, she acknowledged a two-year gap in medical treatment: she had not sought medical treatment for her injuries from 2019—when Dr. Jones told her to return on an as-needed basis—to November 2021—when she returned to Dr. Cheyne.

On February 27, 2024, the ALJ issued an opinion denying Melius's claim, finding that she failed to prove that she was entitled to additional medical treatment for her compensable piriformis injury to her right buttock and thigh and that she had not proved that she sustained a compensable injury to her low back on July 11, 2018. In light of this decision, the ALJ found that the statute-of-limitations defense was moot. The ALJ also found that Melius failed to prove that she was entitled to temporary partial-disability benefits from September 19, 2019, to a date yet to be determined and denied her request for attorney's fees.

Melius appealed the ALJ's decision to the Commission, and in an August 21, 2024 opinion, it affirmed. The Commission noted that Dr. Holder's July 11, 2018 report stated that Melius sustained a right hip strain and diagnosed her with a strain of muscle, fascia, and tendon "of right hip." The Commission also noted that on Melius's Form AR-C that she executed in October 2018, she stated that she injured her buttock and thigh. The

7

Commission found that Melius specifically testified in April 2019 that on the day of her July 11 work incident, she "felt a popping in [her] buttocks on [her] right side" while lowering and pushing a resident's bed, the pain was in her "right glute," and she did not suffer a back injury. The Commission also found that Dr. Cheyne reported in July 2019 that Melius was "nontender in the low back" and that he continued to believe Melius's injury was "not a lower back issue." Although the Commission recognized that Dr. Jones stated in August 2019 that he thought Melius had hurt her back, the Commission said that it had assigned "minimal weight" to this opinion because neither the medical evidence nor Melius's testimony indicated that she injured her back on July 11, 2018. The Commission found that she did not establish a compensable injury to her back by medical evidence supported by objective findings and that none of the abnormalities shown in her lumbar spine beginning in July 2019 were causally related to the compensable piriformis injury she sustained on July 11, 2018. This appeal followed.

In reviewing a decision of the Commission, this court reviews the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if the decision is supported by substantial evidence. *Min. Springs - Saratoga Sch. Dist. v. Bell*, 2023 Ark. App. 458, at 7, 678 S.W.3d 58, 62. Substantial evidence exists if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Id.* at 7, 678 S.W.3d at 62. The issue is not whether the appellate court might have reached a different result from that of the Commission but whether reasonable minds could reach the result found by the Commission. *Id.*, 678 S.W.3d at 62.

8

It is the Commission's duty, not ours, to make credibility determinations, to weigh the evidence, and to resolve conflicts in the medical testimony. *Booneville Hum. Dev. Ctr. v. Foster*, 2024 Ark. App. 618, at 5, 704 S.W.3d 315, 319. When the Commission denies a claim due to the claimant's failure to meet his or her burden of proof, the substantial-evidence standard of review requires this court to affirm the Commission's decision if the opinion displays a substantial basis for the denial of relief. *Melius I*, 2021 Ark. App. 61, at 4, 618 S.W.3d at 413.

A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Supp. 2023). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Complaints of pain are not considered objective medical findings. Ark. Code Ann. § 11-9-102(16)(A)(ii)(a). The burden of proving a specific-incident compensable injury is the employee's and must be proved by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(i).

The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Marshall v. Ark. Dep't of Corr.*, 2020 Ark. App. 112, at 5, 594 S.W.3d 160, 163. It also has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 134, 84 S.W.3d 878, 881 (2002). When there are contradictions in the evidence, it is within the Commission's province to reconcile

conflicting evidence and to determine the true facts. *Melius I*, 2021 Ark. App. 61, at 5, 618 S.W.3d at 413.

Melius's sole argument on appeal is that the Commission's August 21, 2024 opinion must be reversed because objective medical evidence and medical opinion clearly demonstrate that the pain she experienced in her right buttock and thigh following her July 11, 2018 injury was merely a symptom of an underlying low-back injury that occurred on that date. In support of her argument, Melius points to (1) Dr. Jones's statement in his August 2019 report wherein he said, "I think that she has hurt her back"; (2) the MRI results that demonstrate a disc protrusion at L4-L5; and (3) Dr. Cheyne's November 2021 note wherein he stated that Melius's right gluteal pain "is likely related to her back." She also argues that Dr. Holder attempted to obtain a lumbar MRI initially, indicating he thought it might be related to her back, but appellees denied his request.

Viewing the evidence and all reasonable inferences in a light most favorable to the Commission, we hold that substantial evidence supports the Commission's finding that Melius failed to prove that she suffered a compensable low-back injury on July 11, 2018. In July 2018, immediately after the incident, Dr. Holder diagnosed Melius with a strain of muscle, fascia, and tendon of her right hip. In October 2018, Melius executed a Form AR-C stating that she had injured her "buttocks and thigh." In November 2018, after a referral from Dr. Holder, Dr. Goodman assessed Melius with muscle strain—likely gluteal—and possible piriformis syndrome. In April 2019, Melius testified before the ALJ that she did not suffer a back injury but an injury to her right gluteal area.

In July 2019, Dr. Cheyne reported that he continued to believe Melius's injury was "not a lower back issue." In August 2019, Dr. Jones said that he "thought" Melius had hurt her back and ordered a lumbar MRI. After reviewing the MRI, which suggested a central/left paracentral disc protrusion along with degenerative abnormalities, he did not state that she injured her low back on July 11 or that a back injury had caused pain in her right hip, buttock, or thigh. Rather, he acknowledged Melius's report of the incident, stating: "Certainly, the story she provided historically that she felt a pop, had swelling and presented immediately, this represents an exacerbation of an underlying degenerative disc phenomenon and at least by the historical information stated, she is thankfully better, and I do not think will require any surgical intervention at this juncture[.]" Also, when Dr. Cheyne stated in his November 2021 report that he "believe[d] that [her pain was] likely related to her back," he had not seen Melius since July 2019—more than two years prior.

We also note that while Melius relies on the MRI results that demonstrate a disc protrusion at L4-L5, the results actually show that there is a *central/left* disc protrusion at L4-L5, and all of Melius's complaints have been to her *right* buttock, thigh, and hip. The lumbar MRI results do not include any right-side findings.

In sum, Melius cites no objective medical evidence or definitive medical opinion that her symptoms of pain in her right gluteal area were caused by an injury to her lumbar spine on July 11, 2018. Neither Dr. Holder, nor Dr. Cheyne, nor Dr. Jones opined that her pain was, in fact, caused by an injury to her low back or that any such back injury was caused by the July 11 work incident. Dr. Holder merely requested an MRI of her lumbar spine and

11

right thigh, which appellees denied. There are no notes indicating why he made this request, and his diagnosis was clear that she injured her right hip. His notes do not mention her low back, much less provide a medical opinion that Melius suffered a low-back injury in the July incident. Moreover, Dr. Cheyne's and Dr. Jones's statements are not diagnoses but merely possible reasons given for Melius's hip pain. Neither diagnosed Melius with a low-back injury or opined that this injury occurred on July 11.

Therefore, we hold that the Commission's opinion displays a substantial basis for denying Melius's claim. The question before us is not whether the evidence would have supported findings contrary to those of the Commission; rather, the decision of the Commission must be affirmed if reasonable minds might have reached the same conclusion. *Martin v. Jensen Constr. Co.*, 2010 Ark. App. 294, at 7, 374 S.W.3d 774, 778. We are unable to say that reasonable minds could not reach this result; therefore, we affirm.

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*Caddell Reynolds*, by: *Matthew J. Ketcham*, for appellant.

*Frye Law Firm, P.A.*, by: *William C. Frye*, for appellees.